UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORMAN DACK,

    Plaintiff,

v.

J. GATCHELL *et al.*,

    Defendants.

Case No. C04-5763JKA

ORDER DISMISSING ACTION

The parties have consented to have this case heard by to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Before the court is Defendant's Motion for Summary Judgment. (Dkt. # 34). Plaintiff did not respond.

**FACTS**

Plaintiff contends defendants discriminated against him and denied him equal protection when they removed him from the receiving units of the Washington Corrections Center and placed him in administrative segregation. Plaintiff claims the reason for the discrimination was his transgender or transsexual orientation and attributes. (Dkt. # 4). Plaintiff alleges he is female from the waist up and male from the waist down. (Dkt. # 34, deposition of plaintiff). Plaintiff concedes his female attributes may not be readily apparent. (Dkt. # 34, deposition of plaintiff).

Plaintiff has not responded to the motion for summary judgment and has failed to contradict

ORDER - 1

defendants statement of facts. Under Local Rule 7 failure to file a response to a motion may be deemed an admission that the motion has merit. Here, as plaintiff has failed to respond, the court adopts the facts in defendants motion for summary judgment as uncontested.

Defendants state:

> Plaintiff is currently in the custody of the Washington State Department of Corrections (DOC) at the Monroe Correctional Complex, Special Offender Unit (MCC-SOU). Exhibit 1, Declaration of Katrina Toal, Attachment A, Offender Based Tracking System, Legal Face Sheet, p. 1. On November 30, 2004, while incarcerated at the Washington Corrections Center (WCC), Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983, against Defendants Joseph Gatchell, Tracy Johnson, Julie Baker and Mathew Boyes. *See* Complaint [Docket No. 4]. The facts underlying Plaintiff's claim occurred during September and October 2004. *Id*. During this period, Joseph Gatchell was a Correctional Sergeant for the R-1 housing unit, Tracy Johnson was a Correctional Counselor III and was assigned to the Administrative Segregation and Intensive Management Unit, Julie Baker was a Captain and was assigned as the Manager of the Intensive Management Unit, and Mathew Boyes was a relief shift Lieutenant. *Id*. According to Plaintiff, these Defendants discriminated against him. *Id*. Specifically, Plaintiff alleges that he was held in administrative segregation from September 25, 2004, to October 12, 2004, because he is transsexual. *See* Complaint.
>
> Plaintiff seeks non-specific relief for discrimination and emotional abuse. *See* Complaint, p. 4. Plaintiff's request for relief does not set forth a claim for monetary damages. *Id*. Additionally, during his deposition, Plaintiff reiterated that he is not seeking monetary damages, but rather, stated that he is "seeking some kind of informative injunctive relief, some reprimands, something. . . . I'm in it just so they stop harassing people like me." Exhibit 2, Deposition of Norman Dack, pp. 37:20-25 to 38:1-12.

(Dkt. # 34, pages 1 and 2)(footnotes omitted). Defendants further state:

> Plaintiff, Norman Dack, DOC #872149, is currently in the custody of DOC at the MCC-SOU. *See* Exhibit 1, Attachment A. At the time of the events at issue, Plaintiff was incarcerated at WCC. *Id*.
>
> On or about September 25, 2004, Plaintiff was housed in the R-1 Unit at WCC, where Sergeant Gatchell worked as the 3rd-shift Sergeant. Exhibit 3, Declaration of Joseph Gatchell, ¶ 4; Exhibit 2, p. 14:17-19. On that date, Sergeant Gatchell received a kite from Plaintiff stating that his cellmate threatened him with a razor.*Id*. at ¶ 5; Exhibit 2, pp. 15:14 through 16:3, 37. That same day, some of the other inmates who resided in R-1 Unit approached Sergeant Gatchell regarding Plaintiff. Exhibit 3, ¶ 5. The inmates told Sergeant Gatchell that Plaintiff was going to be "taught a lesson about putting his hands on other men." *Id*. The inmates also told Sergeant Gatchell that the "lesson" would not come from them, but rather from some unidentified "skinheads." *Id*. Sergeant Gatchell was aware of "skinhead" activity relating to violence in DOC and believed that the threat to Plaintiff's safety was credible. Exhibit 3, ¶ 5.
>
> At approximately 4:44 p.m. on September 25, 2004, Sergeant Gatchell placed Plaintiff in administrative segregation for involuntary protective custody. Exhibit 3,

ORDER - 2

Attachment A, Administrative Segregation Referral, and Attachment B, Segregation Authorization. Sergeant Gatchell referred Plaintiff to administrative segregation for Plaintiff's own safety until the sergeant could conduct an investigation into Plaintiff's allegations that he had been threatened by his cellmate and into the threats against Plaintiff by other R-1 Unit inmates. Exhibit 3, ¶ 6. According to the Segregation Authorization, the reason for placement was "threat to others/self/security." Exhibit 3, Attachment B. Plaintiff was notified of the reasons for placement and that a review would be held on September 27, 2004. *Id.*

Plaintiff's placement in administrative segregation was reviewed on September 27, 2004. *See* Exhibit 4, Declaration of Tracy Johnson, Attachment C, Administrative Segregation Recommendation. The purpose of the review hearing was to determine whether there was a reason to continue Plaintiff's placement in administrative segregation beyond 72 hours. *Id.* at ¶ 8. The hearing officer for the review hearing was James Tucker. *Id.*, Attachment C. At the hearing, the decision was made to retain Plaintiff in administrative segregation pending investigation by Sergeant Gatchell. *Id.* at ¶ 8 and Attachment C. The decision of the hearing officer was approved by the unit Captain, Tracy Johnson, and by the Superintendent's designee, Captain Julie Baker. *See Id.*, Attachment C.

Plaintiff subsequently submitted a written appeal of his placement in administrative segregation. *See* Exhibit 2 at p. 26:6-16 and at Exhibit 4 to Deposition, Appeal Letter. In that appeal letter, Plaintiff stated that he was "locked in IMU under false pretences [sic]" and Sergeant Gatchell was out to get him. *Id.*

On October 12, 2004, Sergeant Gatchell left for a one-week vacation. Exhibit 3, ¶ 8. He had not yet completed his investigation relating to Plaintiff. *Id.* On October 12, 2004, Plaintiff's administrative segregation placement was reviewed a second time. Exhibit 4, Attachment D, Administrative Segregation Recommendation. A decision was made by Hearing Officer Tracy Johnson to transfer Plaintiff to an empty cell in R-2 unit, where Plaintiff could be housed by himself pending completion of the investigation by Sergeant Gatchell. *Id.* Captain Baker approved the recommendation. *Id.* On that same day, Plaintiff was transferred from Administrative Segregation to the R-2 unit. *See* Exhibit 1, Attachment A, p. 2.

Upon returning from his vacation, Sergeant Gatchell was advised that the investigation regarding Plaintiff had been reassigned to another staff member. Exhibit 3, ¶ 9. Sergeant Gatchell had no further involvement with the investigation into Plaintiff's claims about being threatened and the statements of other inmates that Plaintiff would be harmed. *Id.*

On November 30, 2004, the Court filed Plaintiff's civil rights Complaint. *See* Complaint. According to Plaintiff, the named Defendants discriminated against him because he is transsexual. *Id.* Plaintiff was deposed on March 3, 2006, regarding the allegations in his Complaint. *See* Exhibit 2. During Plaintiff's deposition, he described himself as transgendered and explained what he means by "transgender" as follows:

Q Now, you've used the word "transgender" a couple times. What does transgender mean to you?
A It means I got a set of tits, ma'am.
Q Okay.
A You're looking to see?
Q No. I mean, you say you have breasts. You've also told me today that you're taking

ORDER - 3

```
    --
A  I've been on it for eight months, over eights months now.
Q  Let me finish the question. You've also told me today that you're on female
hormones. Do you have breasts as a result of the female hormones --
A  Yes, ma'am.
Q  -- or is this something that you have when you're not taking female hormones?
A  It's from the female hormones.
Q  You're voluntarily taking female hormones; is that correct?
A  Yes, ma'am.
Q  How would you describe your gender identity?
A  I don't know. Half female on top, half male on the bottom, but 100 female inside.
Q  Now, would it be accurate to say that transgender is not the same as -- that's a
gender orientation. That's not the same as sexual orientation; is that correct?
A  That's correct.
```

Exhibit 2, pp. 21:4 through 22:2. However, Plaintiff acknowledged that his transsexuality might not be readily apparent:

```
A  Well, anybody can tell when they're looking at me with my hand actions and
everything. I guess they can; maybe they can't.
Q  You admit that what you think is obvious might not be obvious to other people; is
that correct?
A  Yes.
Q  Is it possible that your old counselor from R-2 did not know that you're
transgendered?
A  It could be possible, yes.
Q  Is it possible that Sergeant Gatchell didn't know you were transgendered?
A  It could be possible, yes.
```

*Id.* at pp. 28:21 through 29:7. Plaintiff also acknowledged that when he wrote in his Complaint that "on the 6th of October, I talked to my old counselor from R-2, and he states to me I'm locked up due to my being a transsexual[,]" that his old counselor actually said that he was in administrative segregation "pending investigation by Sergeant Gatchell" and that Plaintiff assumed it was because he was transsexual. *See* Complaint; Exhibit 2, pp. 27-29. Additionally, Plaintiff acknowledged that he was placed in administrative segregation and subsequently moved to a single cell for his own protection. *See* Exhibit 2, pp. 12, 16, 23. He also admitted that DOC was responsible for his physical safety, and that if someone was threatening to hurt him, DOC would be responsible for making sure he was not hurt. *Id.* at p. 25.

     In September and October 2004, none of the Defendants were aware that Plaintiff was transsexual or transgendered. *See* Exhibit 3, ¶ 10; Exhibit 4, ¶ 10; Exhibit 5, Declaration of Matthew Boyes, ¶ 6; and Exhibit 6, Declaration of Julie Baker, ¶ 8. Defendant Gatchell referred Plaintiff to administrative segregation on September 25, 2004, for involuntary protective custody for the sole reason that he believed Plaintiff might be in danger and needed to be kept safe pending the outcome of the investigation in the threats against Plaintiff. *See* Exhibit 3. Defendant Boyes approved Plaintiff's placement in administrative segregation for the same reason. *See* Exhibit 5. Defendant Johnson and Defendant Baker approved Plaintiff's continued placement in administrative segregation from September 27, 2004, through October 12, 2004, and then approved his transfer to a single-inmate cell in R-2 Unit on October 12, 2004, based only on the need to ensure Plaintiff's physical safety. *See* Exhibits 4 and 6.

ORDER - 4

(Dkt. # 34, pages 3 to 7)(footnotes omitted).

## DISCUSSION

### A.   The standard of review

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

### B.   Analysis

The similarity in facts between this case and Farmer v. Brennan, cannot be ignored. Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer an inmate with the same physical attributes as plaintiff's, female from the waist up and male from the waist down, was placed in general population. He was subsequently raped by other inmates and sued prison officials for failure to protect. The court granted qualified immunity to the prison officials and held that prison officials will be held liable only if they know of a substantial risk to a persons health or safety and ignore that risk. Prison officials in Farmer claimed they did not know plaintiff was at risk. Farmer v. Brennan, 511 U.S. 825 (1994). The court held that for prison officials to be liable they must know the facts, conclude the person is

ORDER - 5

1 in danger, and ignore the risks.

2 Here, unlike <u>Farmer,</u> prison officials were made aware of specific threats to plaintiff's safety and they acted by removing plaintiff from the receiving units and placing him in administrative segregation pending investigation.

While plaintiff wishes to portray the actions as discriminatory and a violation of his Equal Protection Rights, his claims fail as a matter of law. As defendants note, to maintain an equal protection claim under 42 U.S.C. § 1983, plaintiff must establish defendants acted with intent to discriminate. <u>Sischo-Nownejad v. Merced Community College Dist.</u>, 934 F.2d 1104, 1112 (9th Cir. 1991). Plaintiff has not responded to the pending motion and has presented no evidence to show improper motive. Indeed, given the facts of this case failure to act and place plaintiff in some form of protective custody may will have been improper.

The actions of prison officials are constitutional if they are reasonably related to a legitimate penalogical goal. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Here, it is uncontested that prison officials received information that plaintiff was in danger. Prison officials acted to protect plaintiff pending investigation into the alleged threats. Plaintiff allegations of discrimination and a violation of his Equal Protection Rights fail as a matter of law.

This action is **DISMISSED WITH PREJUDICE.** The clerk's office is directed to send copies of this order to the plaintiff and counsel for defendants.

DATED this 14th, day of July, 2006.

                                       /S/ J. Kelley Arnold
                                       J. Kelley Arnold
                                       United States Magistrate Judge

ORDER - 6